We have one argument on the motions calendar today, so we'll hear that argument first and then we'll proceed to the day calendar. So, gentlemen, would you proceed? If it pleases the Court, my name is Brian Komack. I'm here for the movements BAP Investors and Creative Kids. I have my colleague Douglas Miro with me. I'm going to refer to the movements today as either Be Amazing or BAP for simplicity. Be Amazing is being irreparably harmed by the preliminary injunction that issued in the absence of a stay. In the court below, we submitted two declarations, one from a founder of Be Amazing, Renee Whitney, as well as from its CEO, Stephen Klein. And both declarations explain that for the last 15 years, Be Amazing has invested millions of dollars promoting, advertising, and really building up the goodwill in the products that have been enjoined. Now, when the ---- Kagan. Mr. Komack, did you seek a stay of the preliminary injunction before the district court? Komack. Correct. We did. We seek a stay pending ---- Kagan. You did?  Kagan. My understanding is that the district court ---- Komack. I'm sorry. At the district court. Kagan. At the district court. Komack. I apologize. Well, we wrote to the court ---- Kagan. And if not, why not? Komack. Sure. So when ---- there were two orders. The first order that issued was on October 4th, and we wrote to the court, and we raised many of the issues that we raise here today. We asked the court about the bond. We said, how can an injunction issue before a bond is posted? We asked the court, how could you enjoin two of the marks that ---- Kagan. When you asked these questions, was this seeking reconsideration, or was it ---- did you actually seek a stay? Komack. No. We saw a clarification of the orders. It was because the order wasn't clear. Kagan. So ordinarily, as you know, we require you to have gone to the district court to seek a stay if it's a preliminary injunction before we would grant such a stay. So can you explain why we should overlook that ordinary requirement? Komack. Right. It was impracticable for us to do it. The court had given us just three days to comply with the injunction. We had already asked for more time to do that, and the court said no in its second order. We asked the court to, you know, to clarify the order to post the bond. The court already said no to that. There's been many products that are enjoined that we believe should not have been enjoined that we discuss in our brief to this court. The court said no. And so given the circumstances that the court had already said no to much of the relief we're asking for here today, we thought it would be impracticable, given the time constraints we were under, to ---- I'm concerned that you didn't do that. And I'm also concerned that we have been subject to a flood of additional motions asking us to take notice of additional evidence that the district court may or may not have seen. Right. All right. So the evidence ---- Is all that in the record? Frankly, there's been too much to keep track of. It is all in the record. Everything that we've submitted to you is in the record below right now.  I'm sorry. I think it's been presented to us in the form of a motion to supplement the record. Why is that? Because this was new evidence that was not available at the time that we made our motion to stay. And we wanted to submit it so that it all relates to the irreparable harm that the amazing ---- But it was before the district court. Yes. It was and is before the district court. So we're not really supplementing the record. I'm sorry. That's true. We wanted to make sure that this evidence was before you. But that's correct. I apologize. Okay. And you say you would suffer irreparable harm. Presumably your adversary will say they would suffer irreparable harm as well. And that's what the proceedings below were about. If consumer confusion is the issue, would an expedited briefing schedule address that? We can't adjudicate the merits overnight. And the district court gave this careful consideration over a long period of time, which is the source of the requirement and expectation that you go to the district court first. Can you explain what makes this case so extraordinary that we should overlook our ordinary requirements? Since the injunction has issued, Be Amazing's sales have gone down 95 percent. It's not receiving any customer orders. All of the relationships with our customers are damaged. The injunction came on the eve of the holiday season after pending for, say, seven months or so. And our customers have walked away. And if we're not able to repair those relationships and fulfill some of the needs while the holiday season is still going on, we may never see those customers again. And quite frankly, with our sales down 95 percent, Be Amazing, as a result of this injunction, is now on the precipice of not surviving as a business. So that's real irreparable harm. And would the same irreparable harm not apply to your adversary? I don't think it would. The court's finding of irreparable harm was based on erroneous findings relating to a license agreement. Be Amazing had been selling these products for 15 years under a license agreement. And when the agreement expired, there's actually a provision in the agreement. It's a sell-off provision. And what it says is that when the RGS has to give it its first and prior right to purchase the products remaining in its inventory, if RGS does not notify Be Amazing of an intent to purchase those products, then the agreement specifically says Be Amazing can sell those products to any third party that they want and pay a royalty. And so under that agreement, the result should have been at least that Be Amazing could sell the products that RGS did not want. But the court enjoined Be Amazing from selling everything, even the products RGS did not want. When the license agreement expired, we offered 100 percent of our products that used the marks at issue, and RGS came back. They only wanted 40 percent. The other 60 percent, the court said we can't sell it. They can't be irreparably harmed by those sales because they're authorized. We paid a royalty for them. The court didn't consider any of that. And we think it's – there's no irreparable harm. They're getting the money that they're entitled to under the agreement. And – All right. We'll hear from your adversary. Thank you very much. Thank you. Okay. Sir. Good morning, Your Honors. My name is Edward Maloof, along with my colleague, Jeremy Schachter. We represent the Appley. Really good stuff. I think the court should not deviate from its normal procedure and should require certainly what the rules require and should have allowed Judge Stanton to at least opine on whether a stay was appropriate. When your adversary asked Judge Stanton to be granted 30 days from the posting of the bond to comply with the injunction, isn't – why isn't that a request for a stay? It would be a 30-day stay. It would include, I think, the day that we're here, wouldn't it? Well, certainly, there was a – as the court already has observed, there was a flood of motion practice after the injunction, including this motion for clarification, whether or not there was a – Yeah, but there was also a motion to be granted a stay for 30 days from the time that the bond was posted. Right. Well, be that as it may, Your Honor, the fact is, if I may, you know, just address the issues of the irreparable harm to my client, if I could, because here we have a terminated licensee that is seeking to extend the license. Perhaps Judge Stanton was concerned that here we were 10 months plus after the license had terminated, which is January 1st is when the license terminated, and now we're into October, and now the terminated licensee is still seeking to yet further extend the license. After having been thoroughly heard by the district court, the appellants, Your Honors, submitted four rounds of briefing, including a sir-sir reply. They submitted three letters to the district court after the first injunction seeking clarification. The court below carefully heard – Well, that's not inconsistent with their view that this injunction will destroy their business. People get agitated. To the contrary. They're a terminated licensee who have a long line of other products. This is one license that they've got where they sell products under license that my client owns the intellectual property of, and my client owns the trademark for. So at some point, there comes whether – Aren't they arguing, though, that the license had provisions that would have enabled them to carry on in certain ways, and that there's some ambiguity in what the contract required and how the license was applied, and that's what the litigation was about? Well, that's what the litigation exactly was about, and the interpretation of the so-called consent letter, which, frankly, Your Honor, should not be heard on an emergency basis on the basis of hastily prepared opposition papers that are currently before the court. I'm willing and prepared to deal with this on appeal on an interlocutory basis, and to the extent Your Honor is suggesting an expedited schedule, I'm certainly agreeable to that and have no objection to it. But, you know, basically preparing an opposition within 24 hours is – and on this record, I think it would be perhaps inconsistent with the findings below, especially given the wide berth the court must give the district court. Do you challenge, though, their allegations that they would suffer irreparable harm? I mean, the kind of – I certainly do, and let me say, Your Honor, in connection with the bond submission that was made to the district court at Judge Stanton's request, counsel – I may draw the court's attention specifically to an October 14 letter, docket number 93 at 4, a letter from Mr. Miro, who's here at table. Quote, here, a bond is necessary to make defendants whole if the appeals court reverses the preliminary injunction. That, Your Honor, is pretty clear admission that a bond is sufficient, that it is not irreparable harm. The irreparable harm always goes to the trademark owner. The irreparable harm always goes to the trademark owner who loses goodwill. Has a bond been posted? That matter is currently pending before the district court, Judge. So there has not been a bond posted? Correct. In other words, the district judge has asked for submissions on this issue, and that is now fully submitted, and Judge Stanton has it sub judici. So has there been a hearing on that or not? Not yet, Your Honor. Again, with the scheduling of the district – of the appellate arguments. This is a bond, and what amount has been requested? The appellants have requested a $4 million bond, Your Honor. Which, honestly, if it's the value of the entire business, that's certainly, to Judge Jacob's point, that's not the value of the entire business. They are not going to go out of business if it's just a $4 million bond. We're really talking about their inventory, allegedly, their sales, allegedly, but it has nothing to do with their entire product line. Their product line is much greater than just what my client was providing under a license. I think, Your Honor, on this basis, they are not likely to find – they're not likely to demonstrate any error, any abuse of discretion by the district judge, especially a district judge who has had more than 60-plus trademark cases in his career. He knows what he's doing, and I think Your Honor should certainly give him a wide berth here. Okay, sure. My former chief judge, now senior judge, Judge Jacobs, is suggesting that we set times for expedited briefing. Maybe we could have your proposals for expedited briefing, and we'll confer with the clerk's office. Very good. Would you say three weeks from now, is that right? And then three weeks to respond, and then two weeks for a reply, something like that? I'm not looking at my calendar, Your Honor. It is over the holidays. I had to give it up also, my calendar, to the marshal. We'll have the clerk's office be in touch. So we nonetheless – agreeing that we'll expedite, but certainly I'd like to be more precise. Whether it's three weeks or four weeks, that would be good. Okay, very good. Thank you, Your Honor.